IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CR-198-1-BR

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | ORDER |
| CAWAJALIN KAVIN MCNEIL | |

This matter is before the court on defendant's motion for compassionate release. (DE # 129.)

In 2011, defendant pled guilty to conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The court sentenced defendant to 60 months imprisonment on the conspiracy count and the mandatory minimum term of 120 months imprisonment, to run consecutively, on the § 924(c) count, for a total term of 180 months imprisonment.

In September 2020, with the assistance of court-appointed counsel, defendant filed the instant motion with supporting documents, (DE ## 129-1 to -9). The government filed a response in opposition. (DE # 131.) The government later filed a notice of subsequently decided authority and requested that the court delay ruling on defendant's motion until the issuance of the mandate in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). (DE # 138.) The Fourth Circuit Court of Appeals has issued that mandate, United States v. McCoy, No. 20-6821 (4th Cir. Jan. 22, 2021), and therefore, the government's request is now moot.

Defendant seeks a reduction in his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018 ("First Step Act").[1] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>   (1) in any case—
>       (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>           (i) extraordinary and compelling reasons warrant such a reduction . . .
>       and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

> The [§ 3553(a)] factors include: "(1) [Defendant's] personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants."

United States v. Adona, No. CR PX-17-345, 2020 WL 4338889, at *2 (D. Md. July 28, 2020) (citation omitted) (alteration in original).

Defendant requests that the court grant him "compassionate release based on the prevalence of COVID-19 in the Bureau of Prisons (BOP) and the risk that COVID-19 poses to [his] health, as well as changes to the law applicable to his sentencing." (Mot., DE # 129, at 1.)

---

[1] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring such a motion. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

In opposition, the government argues the court should construe defendant's motion as a successive 28 U.S.C. § 2255 motion and dismiss it for failure to obtain prior authorization from the Fourth Circuit Court of Appeals. (Resp., DE # 131, at 10-12.) Alternatively, should the court reach the merits of defendant's motion, the government argues the court should deny it because defendant has not shown extraordinary and compelling reasons justify a reduction in his sentence and because the § 3553(a) factors weigh against any reduction. (Id. at 21-26.) It also urges the court to deny the motion because, it contends, defendant has not presented an adequate release plan. (Id. at 26-29.)

The court first considers whether defendant's motion is, in substance, his second § 2255 motion.[2] According to the government, because defendant's motion "is based, not on any medical condition of Defendant that increases his risk of severe illness or death from COVID-19, but instead on a challenge to his sentence," the court should dismiss it for lack of jurisdiction. (Resp., DE # 131, at 1.) Although the court will construe "a motion directly attacking the prisoner's conviction or sentence" as a successive challenge under § 2555, United States v. Winestock, 340 F.3d 200, 207 (4th Cir. 2003), the court disagrees with the government's characterization of defendant's motion.

Defendant is asking the court to reduce his term of imprisonment for extraordinary and compelling reasons, which § 3582(c) explicitly authorizes, despite the finality of defendant's judgment of conviction. See 18 U.S.C. § 3582(b), (c)(1)(A)(i); McCoy, 981 F.3d at 288 ("[W]hile the finality of sentences is an important principle, § 3582(c)(1)(A) 'represents Congress's judgment that the generic interest in finality must give way in certain individual cases,' and authorizes judges to implement that judgment." (citation omitted)). When a

---

[2] Defendant filed a § 2255 motion in 2016, (DE # 74), which the court dismissed, (DE # 105).

defendant files a motion pursuant to that statute, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" McCoy, 981 F.3d at 284 (emphasis added) (citation omitted). It is within the court's discretion, conducting an individualized assessment, to determine what constitutes an extraordinary and compelling reason to support a potential sentence reduction in a case. See id.

The government is correct that defendant does not claim he has an underlying medical condition which increases his risk of severe illness or death from COVID-19. However, that does not mean defendant is challenging his sentence under § 2255. Defendant requests that the court consider not only COVID-19's spread in the prison system but also a change in sentencing law which arguably, were he sentenced today, might result in a significantly lower sentence. The court may collectively consider these grounds in assessing whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)(i). Cf. id. at 286 ("The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)."); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison *alone* cannot independently justify compassionate release . . . ." (emphasis added) (citation omitted)). Therefore, the court does not deem defendant's motion as a successive one under § 2255, and the court will consider its merits.[3]

Petitioner initially relies on the COVID-19 pandemic. "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19,

---

[3] Defendant has exhausted his administrative rights. In April 2020, defendant submitted a request for release to the Warden, which the Warden thereafter denied. (See DE # 122-1.) The government does not dispute that defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement.

4

[district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility." United States v. Kibble, Criminal Action No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing United States v. Brady, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)). Defendant is 26 years old and, as recognized above, does not contend he suffers from any underlying health conditions which increase, or might increase, his risk of severe illness from COVID-19. Cf. Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (identifying medical conditions which increase or might increase the risk for severe illness from COVID-19) (last visited Jan. 22, 2021). However, because he is incarcerated, defendant does face an increased risk of contracting COVID-19. See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html (go to People Who are Incarcerated at Correctional and Detention Facilities, select Do I have a greater chance of getting COVID-19?) ("People in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people.") (last visited Jan. 22, 2021). According to recent data from the BOP, at FCI Victorville Medium II, where defendant is incarcerated, 31 inmates and 11 staff are positive for COVID-19, with 463 inmates and 44 staff having recovered. Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Jan. 22, 2021). To be sure, this institution has experienced an outbreak, but the number of infections is decreasing. Compare id., with United States v. Arciero, No. CR 13-001036 SOM, 2021 WL 149678, at *3 (D. Haw. Jan. 15, 2021) ("Since the filing of Arciero's original motion, there appears to have been a COVID-19 outbreak

at her facility. As of the morning of January 14, 2021, 46 inmates and 14 staff have active cases of COVID-19, and 447 inmates and 39 staff have recovered from it." (citation omitted)).

In addition to the COVID-19 pandemic, defendant relies on the decision in Alleyne v. United States, 570 U.S. 99 (2013), which the Court decided after he was sentenced. In that case, "the Court overruled existing precedent and held that 'any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury' and found beyond a reasonable doubt." United States v. Archie, 771 F.3d 217, 221 (4th Cir. 2014) (quoting Alleyne, 570 U.S. at 103). All things remaining equal, had that case been decided at the time of his sentencing, defendant would have faced a mandatory minimum sentence of 60 months, rather than 120 months, on the § 924(c) count because he pled guilty to possessing, not discharging, a firearm in furtherance of a crime of violence. Cf. Jones v. Zych, 812 F. App'x 115, 121 (4th Cir. 2020) ("After *Alleyne*, . . . the jury must find that a firearm was discharged, and it must do so beyond a reasonable doubt."). The court agrees with defendant that this change is significant. However, the court disagrees with his suggestion about its impact on his overall sentence.

When a defendant is convicted of multiple offenses, like defendant here, the court engages in a holistic process to arrive at an overall sentence. See United States v. Ventura, 864 F.3d 301, 309 (4th Cir. 2017) (describing the "sentencing package doctrine"). In this case, defendant was realistically facing at least 240 months imprisonment, comprised of a guideline imprisonment range of 121 to 151 months on the conspiracy count and 120 months consecutive on the 924(c) count.[4] (See PSR, DE # 33, ¶¶ 71, 72-73.) The court fashioned an appropriate total sentence of 180 months imprisonment by downwardly departing from the guideline range

---

[4] The court notes that at the time of his plea and consistent with applicable law, the court informed defendant of the penalties to which he was subject, including a mandatory minimum consecutive term of imprisonment of 120 months on the § 924(c) count. (See Pl. Agreement, DE # 18, at 4-5.)

6

on the conspiracy count to 60 months based on mitigating circumstances. (See Statement of Reasons at 2, 4.) If defendant were sentenced today, his guideline range on the conspiracy count remains 121 to 151 months. With that range and 60 months consecutive on the § 924(c) count pursuant to Alleyne, defendant would be realistically facing at least 181 months imprisonment, which is approximately the same sentence the court imposed. Under such circumstances, the court cannot say today it would downwardly depart. In other words, the court likely would not change its overall plan for defendant's sentence. The court concludes Alleyne's impact on defendant's sentence and COVID-19's likely effect on him as an incarcerated person are not extraordinary and compelling reasons to warrant a reduction in his sentence.

The court's consideration of the § 3553(a) factors does not alter this conclusion. The offenses defendant committed were very serious and particularly violent. Although mitigating circumstances exist, (see id.), during one robbery, defendant shot the cashier twice, and, while fleeing the scene of another robbery, he fired three to four shots towards a store employee, (PSR, DE # 33, ¶¶ 11, 14).

Defendant has been in custody more than 10 years. During that time, he has earned his GED, taken numerous educational courses, and maintained employment. (Mot., Ex. B, DE # 129-3.) He is projected to be released in September 2023, see Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (search BOP Register Number 54962-056) (last visited Jan. 28, 2021), and has strong community support, (see Mot., Exs. C-E, DE ## 129-4 to -6).

Despite the positive steps defendant has taken while incarcerated, according to information obtained from the United States Probation Office, he has committed four prohibited acts within the past five years, including one within the last year. (See Inmate Discipline Data.) The BOP classifies two of those acts, possession of a hazardous tool and possession of drugs or

alcohol, of greatest severity. <u>See</u> Federal Bureau of Prisons Program Statement 5270.09, Inmate Discipline Program, Table 1 (Aug. 1, 2011). Regarding that conduct, which occurred approximately two years ago, defendant admitted to having a cell phone hidden in a mattress and to possession of K2 (a synthetic cannabinoid), which tested positive for amphetamines. (Inmate Discipline Data at 2.)

Considering all the circumstances, the court concludes reducing defendant's term of imprisonment to time served would not reflect the seriousness of the offenses, provide just punishment, or deter crime. Therefore, defendant's motion is DENIED. For purposes of the record, the Clerk is DIRECTED to file the Statement of Reasons under seal and file publicly the Inmate Discipline Data report the court received from the United States Probation Office.

This 29 January 2021.

_____
W. Earl Britt
Senior U.S. District Judge